This case on the calendar is 21-358, no, 35468. It's the Rasmussen case. I think that this is a hybrid argument. We have Ms. Young in the courtroom, and I think there he is. Mr. Nelson, can you hear us? Great. Okay. So we're ready to proceed with argument when you're ready. Thank you, Your Honors. Opposing counsel, may it please the Court. This is, as you indicated, a hybrid argument. There's two components here. They both turn on vocational testimony, what the vocational expert can attest to, what he can't attest to, and the claimant's opportunity to rebut that testimony. So the first element is this job of document preparer, which the vocational expert testified on direct examination that this is a reasoning level 3 job. Now, under SSR 004P, neither the vocational expert's testimony nor the DOT's is inherently controlling when there is an apparent conflict. However... So this is the problem I have with this case. I'm not so sure there's an apparent conflict. Could you talk about that? Well, Zavalin v. Colvin, this Court, held that there is an apparent conflict between, on the one hand, the requirements of reasoning level 3, and, on the other hand, a limitation to simple, routine, repetitive work. The Zavalin Court used the terms routine and repetitive interchangeably. I think the salient point there was simple. Well, I was on the Zavalin Court, and I think we've all read that case. And, of course, that claimant was in a very different position than the person here. And here we have simple, repetitive. I grant you, but it's one-to-three-step tasks. So what about your brief acknowledges this. So what do you do about that? Well, I think when you say simple, repetitive, routine, one-to-three-step tasks, that's necessarily a subset of the universe of simple, repetitive, and routine tasks. The addition of the phrase one-to-three-step doesn't expand that universe. It contracts it by eliminating jobs that are simple, repetitive, routine, but perhaps have four steps. So this is still in the universe of simple, repetitive, and routine tasks. If it was one-to-two steps, that would be reasoning level 1. That's rounds. I don't see how that third step can get us all the way to reasoning level 3 when we're still talking about simple, routine, and repetitive tasks. Well, I'm not so sure you're right, counsel. It has to be an apparent conflict. This is the second time you and I have talked about apparent conflicts this week. Yes, it is. I know. But I'm just not so sure that that is so apparent here. We have other indications that this particular claimant, certainly unlike in Zavalin, other indications that this claimant may be well capable of reasoning level 3. So what do we do about that when we come back to it has to be apparent under our case law? Well, I think the conflict comes from simple versus reasoning level 3. The judge found that she is limited to simple, repetitive, routine tasks and one-to-three-step tasks. That wasn't presented as an additional range of tasks. That was presented as an additional limitation. I'm not sure I read it the same way, but is that the best you've got from the case law that we've got? You've pointed out Zavalin and rounds. Right. Okay. Structurally, in terms of language, if the judge had said she's capable of simple, routine, repetitive tasks and also other tasks of one-to-three steps, I think that might be a situation where we would say that maybe those one-to-three-step tasks are stepping outside of that simple, routine, repetitive. But it wasn't stated that way. It was phrased as a continuation of this limiting phrase. And so the additional phrase, one-to-three-step tasks, is an additional limitation. It is not an expansion of the universe of simple, routine tasks. Now, as far as whether this client is differently situated from the client in Zavalin, the judge found this RFC, and the commissioner is bound by that. I'm talking about the reasoning level. I'm sorry? I'm talking about the reasoning level. Yes. All right. Sorry, let me get my bearings again. I'm a little out of breath, and I don't know why. The vocational expert also— I think you answered my question. I'm just going to the apparent conflict. As you know, you and I talked about this a lot on—I think it was Monday of this week. So we don't need to go over that again. You've answered my question, and I don't think there is any other case law on point in this circuit. So I have another question about the evidence that was attempted— and this is for both of you, really—the evidence that was attempted to be introduced at the council level. Could you speak to that? I would love to speak to that. That, to me, is what's interesting about this case because there was a previous case, Scheibe, where in that case the court affirmed the judgment of the district court because the claimant had not done anything to introduce rebuttal evidence prior to litigation at the district court. And Scheibe provided a roadmap, said in order to rebut vocational testimony, the issue must be preserved on the record before the ALJ, which is itself unusual. There's not normally an issue preclusion rule in Social Security cases. Second, the claimant must submit rebuttal evidence either to the ALJ, if permitted, or to the Appeals Council. And third, that rebuttal evidence must cast doubt in the V.E.'s estimates. So you know opposing counsel's position on this, that it wasn't sort of properly presented in front of the ALJ, that it wasn't an abuse of discretion for the ALJ to say, oh, no, the expert has hung up at this point, telephonic, and then we have the problem of the Appeals Council electing not to take the case. So what do we do about all of that? We've said you can submit it to the Appeals Council, but what about the fact that the Appeals Council in this case didn't choose to take the case? Well, I disagree that we didn't do enough to preserve the issue. Scheibe says that all we really have to do to preserve the issue is ask the vocational expert about the source of their job numbers. We did that. That's in the record. Right, but I'm asking you, sir, forgive me, I'm asking you for the remedy, and I'm trying to figure out if you're really asking is for us to enter an order requiring that the ALJ consider this. Do you think it was an error by the counsel because you followed the case law? Well, it's an error by the commissioner. Obviously, the ALJ never saw this rebuttal evidence, and so it would be a little strange to expect the ALJ to address evidence that he never saw. Right, and do you think it was an abusive discussion for the ALJ to refuse to allow it at that point? I think it was, frankly. Tell me why. Well, because we don't have the opportunity to voir dire these experts ahead of time. There's no opportunity to know what they're going to say until they say it. Right, and our case law speaks to that, for sure. Right, so obviously if we have a material disagreement with the vocational expert and a basis for that disagreement, that's going to have to be submitted by some post-hearing documentation. And for the judge to per se deny that, I think, was an abusive discretion. So you think, but just to be, I don't mean to belabor this, but I think it is an important issue, and you think the error was there as opposed to at the counsel? Well, I think the error is in both places, frankly. Okay. The ALJ should have allowed the evidence to be submitted before him. That error could have been cured by the evidence being addressed by the commissioner at the appeals counsel level. The commissioner accepted the evidence, but then didn't address it. And that's where the problem lies, because this evidence is from apparently the same source that the vocational expert used. And under Buck, we know that where we have evidence from the same source, it is a vastly different number. The commissioner has to address that. And that's all we're asking is a remand for the commissioner to address that. Do you want to save some time? Yes, I do. Thank you, Your Honor. Okay. You bet. Thank you. May it please the court and counsel, Lars Nelson on behalf of the commissioner. This court should affirm because substantial evidence supports the ALJ's decision here. I would like to start with the document prepare position, and then I'll transition to the job browser testimony. Judge Christin is right. There is not an apparent conflict in this case. Adding a one to three steps to the residual functional capacity assessment truly speaks to the several concrete variables that is anticipated in reasoning level three. And this is consistent with this court's case law and the vocational testimony here. In Zavalin and Rounds, this court wanted ALJs to explore GED reasoning levels at the administrative hearing. And at 64, the ALJ put this specific question to the vocational expert in this case. Wait a minute. I didn't think that question was specific, to be blunt about it. So my question is whether there's a conflict in the first place, because to be candid with you, it seems to me if there was a conflict, it wasn't cleared up or explored by the ALJ. So which position are you – which prong are you relying on? Well, obviously, I don't think that there is any specific conflict, certainly not under this court's case law, Rounds and Zavalin. Well, not exactly. They don't line up exactly. But what's your strongest argument that opposing counsel is incorrect to argue that this is an apparent conflict? I mean, my strongest argument would be that we look at the totality of the job, which includes specific vocational preparation, the description of the job, and GED reasoning levels, and we just see that this is an unskilled job. And when Reasoning Level 3 anticipates several concrete variables, and it still is that common sense application, I think one to three steps falls within that several concrete variables. And we can also, as in Zavalin, take the next step and look at basically can the claimant do it? In this case, she testified that she had her GED degree at 42 in the record. She also went and did job training and plastering, which she talked about. She confirmed at the hearing that she can read, add, subtract, multiply, divide. That is not like the case in Zavalin where the claimant was in special education, and the court could clearly see that he could not make that transition. And if you look at 24 in the decision, it's undisputed that she returned to construction work during the relevant period, and the ALJ made that finding. It wasn't substantial gainful activity, but I take the import of that to be that if she could do that type of work, that that has bearing and is relevant to the Reasoning Level 3. Is that your position? Yes, that would be our position. So what about this evidence that wasn't allowed? That is concerning. It seems to me that opposing counsel followed the letter of our case law. Well, I mean, in part, I think that that's a very limited establishment of foundation. If all the claimant has to ask is which software program did you use, and that is sufficient foundation to submit evidence to rebut the testimony. Well, but we have case law where we have said we don't expect you're necessarily going to have that right with you. It has to be inquired into, and when we specifically said if you don't have it there, you can submit it to the appeals counsel, right? Absolutely, Your Honor. But I don't think the court just said that this is a perfunctory analysis. I mean, it said in Shaibi, it said they have to inquire into the evidentiary basis. And in BSTIC, they talked about the exploring and cross-examination, where did they get the data from, how it was analyzed, and how were the conclusions derived. And I think that these are – there was room for more inquiry here. What software version was used? When was the software updated? When was the underlying data sources from the Department of Labor drawn from? Let me ask you – let me interrupt and apologize. What difference would it have made at the hearing if you'd asked those questions since you didn't have information about the V.E.'s opinion until he heard it at the hearing? Well, Your Honor, what they would do then is they would probably support their lay submission of – with a declaration saying, I used the software. It was up – it was calibrated to the exact dates used by the vocational experts. We can see from my inputs, which was another form of inquiry. What inputs specifically did you use, vocational expert, to derive these job numbers? The declaration would say, I did all the same things that the V.E. did, and look, there's a discrepancy here. But even if the – if that foundation had been laid at the hearing, regardless of whether the ALJ allowed the job numbers post-hearing or they were submitted as anticipated by Shaibi to the Appeals Council, we still have the problem that these are just lay numbers. They are missing the necessary foundation that this Court described in Bayless, in Ford v. Saul, in Terry v. Saul, that the expert here performs some – an analysis. The expertise is what transforms just the use of a software into substantial evidence that we can use. There would be no reason to call vocational experts if all we were going to do is enter some data into software programs and spit out what the job numbers are. What do V.E.s do that's different than that? Well, for example, in BSTEC, the vocational expert relied on their own job surveys. So there are other sources of data that can be used. But no, his source was the Job Browser Pro. Yes. So if that's his source and counsel uses the same source and submits the same data, what additional information would the V.E. add to that as far as using the Job Browser Pro? We don't know because those questions were never asked at the hearing, Your Honor. But presumably, a vocational expert can add value to the Job Browser Analysis by saying, you know, I've done surveys in the local economy. I have reduced them in light of certain factors. The vocational expert could also say, you know, my – Well, let me interrupt you. I apologize, but I thought his testimony was that he relied entirely on the Job Browser Pro. They were asking for the source of the numbers. Yeah, and that's what we're talking about are the numbers, right? Yes. But I think the source of the numbers, where you get the numbers from, and what analysis you performed in deriving them, I think those are distinct issues, Your Honor, that I can say I get my data from the Department of Labor. That doesn't mean that I haven't done any analysis and boiled and distilled that data down into something more specific to this particular claimant in case. So you're saying that the V.E. could have taken the Job Browser Pro number and changed it based on his own experience but didn't tell the ALJ that? He just said, I rely on the Job Browser Pro? I mean, yes, they do alter the job numbers based on their own experience, yes. And the vocational expert specifically. Wouldn't that be part of the foundation for his opinion is, I took the Job Browser Pro and I changed it because my own experience is different than what the Job Browser Pro showed us. Well, that's not for the commissioner to meet their burden at step five. I mean, I think that would be a certainly reasonable basis for any plaintiff's attorney to make that inquiry at the hearing. But the ALJ simply just asked to ask what numbers exist in the national economy, and that is sufficient under this court's case law. Right, but in this case, when the claimant's attorney asked the V.E. what the basis for the numbers were, the only thing that the V.E. pointed to was the Job Browser Pro. Isn't that correct? Yes, that is correct. But again, there are questions of software version, where the underlying data set. We have a vocational expert testifying in July of 2019. The lay data submitted here lists the data that it was generated from, and it relies on data all the way from 2007 to 2018. As this court can take judicial notice, there are monthly job reports where jobs in the national economy swing dramatically by hundreds of thousands of jobs. When the underlying data that was, you know, drawn by that Job Browser was used is relevant. Isn't that the nature of rebuttal evidence, counsel? In this case, rebuttal evidence was submitted that calls into question the numbers. If there is a response that the commissioner can show that the V.E.'s numbers were in fact more accurate, correct, more tailored to the time in question, isn't it the commissioner's burden to respond to the rebuttal evidence? No, Your Honor, not in this procedural posture. It would have been while the vocational expert's there, that's why the ALJ wanted the issue teed up. The ALJ would have been prepared to explore this. Unfortunately, it was presented... How do you deal with the problem pointed out by the court that the claimant has no notice of what jobs the V.E. is going to identify, and therefore can't come to the hearing prepared with rebuttal evidence? Well, and that was exactly... I would just posit that there could have been more foundation and exploration into this issue than the one question posed, which was, where did the job numbers come from? And beyond that, under Bruce, which is the posture that we're in now, the question strictly for the court is, does substantial evidence still support the ALJ's decision, notwithstanding this lay job data here? And I would posit that absent any declaration from a vocational expert, it simply does not. We still have vocational testimony that could support the ALJ's decision. But again, I don't think this court has to reach this issue because there are sufficient document-prepared jobs. I see that I'm over my time, so unless, of course... I have one last question. Do you agree that the discrepancy between the petitioner's job numbers submitted in his rebuttal and the V.E.'s numbers are significant? I would not, Your Honor. They're not significant. Why not? I think that we would rely on Buck for setting that framework, and Buck, the discrepancy was hundreds of thousands of jobs. Here, the document-preparer is just a handful, just a couple thousand jobs difference. Well, no, there's 28,000 for the final assembler versus zero. That's a big discrepancy, isn't it? In jobs, I would submit that it is not, especially when we have monthly job reports where the jobs in the national economy sway thousands of positions. So you're saying 28,000 is not a significant number of jobs then that that's available? Is that what you're saying? No, 28,000 is, especially under Gutierrez v. Commissioner of Social Security, that is a significant number of jobs. So then it is significant. The difference between 28,000 and zero must be a significant number then. Is that true? Well, I apologize if I misunderstood the question. My understanding was, was the difference between the two numbers significant? Not the delta. Shouldn't we be concerned that one report indicates that there are zero jobs available in the national economy in the category? If the court interprets that lay job numbers, then that would be, yes, that would be concerning. But, again, we do have other circuits who have said from 6,000, and if you look at 14 of the plaintiff's brief, I think they're adding in 5,000 extra jobs to that zero via some analysis that they've done. So we really have over 10,000 jobs here, even accepting their numbers as true. And when we look at other circuits, that still constitutes a significant number, such that this court could affirm. But not this circuit. It would be a change of, we would be moving the bar in this circuit, wouldn't we? I don't think the analysis changes, Your Honor, because this, in Gutierrez v. Colvin, the court looked at its own case law, looked at other circuit case law, and there's no reason to depart from that analysis of we're looking at jobs in the national economy. Our case laws never set the bar there. I think that's why you just said, quite carefully, that this change would be in line with other circuits, but not ours. It's not a trick question. I just wondered if you know of some case law that I don't know about. Ninth circuit case law. No, there's no ninth circuit case law holding that 10,000 is a significant number in the national economy. That's correct, Your Honor. Okay. I just want to make sure we have clear communication, and I appreciate that. We've taken you well over your time. Let me just make sure Judge Sung, anything else? No, and not from Judge Reiser. Thank you for your argument, counsel. Thank you, Your Honors. Going to Mr. Nelson's point, there are two guideposts in ninth circuit case law. Gutierrez is one where 25,000 was set as a close call. The other case is Beltran that said 1,680 is not significant. Between 1,680 and 25,000 is unadjudicated, and the court is reluctant, I believe, to set a bright line, and rightfully so. But if 25,000 is a close call, then the number here isn't close to that. There's a significant gap, I think, between 6,000 or we had offered the estimate of, well, if 149 self-employed are 2.9%, then maybe this data could arguably support 5,000 positions, which is still vastly different from 25,000. At the most, the Job Browser Pro reports support around 11,000 jobs between these two occupations that we believe are still valid. So I do agree with Mr. Nelson that it appears that document preparer exists in significant numbers. Our data shows that. The vocational expert said that. So the question then becomes whether document preparer must be excluded. I believe it must be because one-to-three-step tasks is only one more step from one-to-two-step tasks. I don't see how that one step can get you from Reasoning 1, which is what Rounds said, to Reasoning 3. Anything further? I have nothing unless the court has questions. I don't think we do. Thank you both for your arguments. Thank you, Your Honors. We'll go to the last case on the calendar, please. It's 21-35303, Moutal. And I should say last case on the calendar that I will participate in. We'll take a break after, in case there's other folks listening who are panicking that their case has come off the calendar, we'll take a break after this argument.
judges: CHRISTEN, SUNG, Rayes